`UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BIG SKY WESTERN BANK, a national banking organization under the laws of the United States of America<br><br>     Plaintiff,<br> v.<br><br>JENSEN FAMILY INVESTMENT COMPANY, LLC, a Delaware limited liability company; 2030 INVESTORS, LLC, an Oregon limited liability company; C. JAMES JENSEN, an individual and a guarantor; and ELLISON C. MORGAN, an individual and as guarantor,<br><br>     Defendants. | Case No. 4:12-cv-00617-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' motion to transfer venue or, in the alternative, to dismiss. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion in part, dismissing two of the Plaintiff's claims and ordering that the remaining claims be transferred to the United States District Court for the District of Montana.

## FACTUAL BACKGROUND

In December of 2007, two investment companies borrowed $1,254,000 from Big Sky Western Bank to buy real property in Teton County, Idaho. The loan was set forth in

a promissory note, secured by a deed of trust, and personally guaranteed by Ellison Morgan and C. James Jensen.  The loan later went into default and the Bank sued the investment companies and the two individual guarantors.  That case, originally filed in Idaho state court, was removed to this Court under its diversity jurisdiction.  The defendant investment companies and individual guarantors have now filed a motion to dismiss or to transfer this case to Montana.

The two investment companies – Jensen Family Investment Company LLC, ("JFIC") and 2030 Investors, LLC ("Investors") – signed a promissory note to pay $1,254,000 to Plaintiff Big Sky Western Bank, a Montana corporation.  The Note was secured by a Deed of Trust, recorded December 27, 2007, conveying to First American Title Co., as Trustee for the benefit of the Bank, a piece of real property in Teton County, Idaho.

JFIC, a Delaware company, signed the Loan Documents at its principal place of business in Seattle, Washington.  Investors, an Oregon company, signed the Loan Documents in its principal place of business in Portland, Oregon.  The two guarantors -- C. James Jensen, a citizen of Washington, and Ellison C. Morgan, a citizen of Oregon -- signed Commercial Guaranties of the Note.

Around May 31, 2012, the Bank directed the First American Title, as Trustee, to send a notice of default to JFIC and Investors.  The Trustee proceeded with a non-judicial foreclosure, and sold the Teton County property to the Bank for its credit bid of $156,000.  The deed was recorded on October 12, 2012.

On November 16, 2012, the Bank filed suit against the Defendants in the District Court for the Seventh Judicial District, Teton County, Idaho. The lawsuit seeks a deficiency judgment against the Defendants for the amount still owing on the loan obligation. The Defendants removed the action to this Court on the basis of diversity jurisdiction in December of 2012.

The Bank makes four claims for relief. First, the Bank requests the determination of the fair market value of the real property at the time of sale. Second, the Bank seeks a judgment against JFIC and Investors for the balance of the principle ($1,010,050.54) with accrued costs and fees ("the Obligation"). Third, the Bank seeks a judgment against Jensen and Morgan ("the Guarantors") in the amount of the Obligation. Finally, the Bank alleges JFIC, Investors, and the Guarantors were unjustly enriched when they took the loan and failed to repay it. For the unjust enrichment claim, the Bank seeks a judgment against all four Defendants in the amount of the Obligation.

In the motion now before the Court, the Defendants ask the Court to dismiss the suit for failure to state a claim or, in the alternative, to transfer the suit to the District of Montana.

## ANALYSIS

### Motion to Dismiss – Legal Standards

In evaluating the Defendants' Rule 12(b)(6) motion, the Court must accept all material allegations in the Bank's complaint as true, and construe them in the light most favorable to the Bank. *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.,* 710 F.3d 946, 956 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory. *Chubb Custom,* 710 F.3d at 956.

Using these standards, the Court will separately evaluate each of the Bank's claims. Before doing so, however, the Court must first decide whether Montana or Idaho law applies. This choice of law will have a significant impact on the viability of the Bank's claims.

**Choice of Law**

The Bank argues that Idaho law should govern these proceedings because the foreclosure was executed pursuant to Idaho law. The Defendants argue that Montana law should govern because the Loan Documents contain choice of law provisions selecting Montana law.

A Federal Court exercising its diversity jurisdiction "is required to follow the choice of law rules of the state in which it sits." *Klaxon v. Stentor Electir Mfg*. Co., 313 U.S. 487, 496 (1941); *see also Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 937 (9th Cir. 2001). Idaho applies the Restatement (Second) of Conflict of Laws analysis when determining what law governs a contract. *Carroll v. MBNA America Bank*, 220 P.3d 1080, 1084 (Id.Sup.Ct. 2009). Under this analysis, an Idaho court should enforce a choice of law provision in a contract, "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Ward v. Puregro Co*., 913 P.2d 582, 585 (Id.Sup.Ct. 1996) (quoting Restatement

(Second) of Conflict of Laws § 187).  There are no legal barriers to the parties in this case choosing the law to govern deficiency judgments, and the Court will therefore enforce the choice of law provision contained within the Loan Documents.

The contract language is clear.  The Deed of Trust states it "will be governed by federal law applicable to Lender, and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions."  *See Exhibit A (Dkt. No. 1)* at p. 26.  This exact language is repeated in the Note, *id.* at p. 12. and the Commercial Guarantee, *id.* at p. 34.  Significantly, for purposes of this motion, the Deed of Trust also states the deeded property, "does not exceed forty (40) acres, and this instrument is a Trust Indenture executed in conformity with the Small Tract Financing Act of Montana (STFA)." *Id.* at p. 17.   The Court will therefore apply Montana law in resolving this dispute.

The Bank argues that because the foreclosure was conducted pursuant to the Idaho Deed of Trust Act, Idaho law should govern these proceedings, despite the parties' agreement that the loan documents be governed by Montana law.  The Trustee did conduct the foreclosure pursuant to Idaho law, and Idaho certainly has a substantial interest in controlling the foreclosure proceedings of real property located within its boundaries.  However, the foreclosure is complete and is not challenged in these proceedings.   The Bank, a Montana corporation, is seeking a deficiency against entities that do not reside in Idaho.  No Idaho interests are implicated in this lawsuit.  Under these circumstances, the agreement of the parties regarding the law governing their relationship outweighs Idaho's interest, if any, in controlling the outcome of a dispute of this sort.

Here, the parties explicitly agreed that the deed of trust, although conveying a security interest in Idaho property, "is a Trust Indenture executed in conformity with the Small Tract Financing Act of Montana (STFA)."  *See Exhibit A (Dkt. No. 1)* at p. 17.  By including this language in their loan documents, it appears clear that the parties intended to include the STFA provisions extinguishing a borrower's right to redemption and barring deficiency judgments following foreclosure.  Mont. Code Ann. § 71-1-318.

**<u>Motion to Dismiss – First and Second Claims for Relief</u>**

In its First Claim for Relief, the Bank asks the Court to determine the fair market value of the Teton County property at the time of the Trustee's sale, which it purchased for $156,000.  The sole purpose of that determination is to establish the amount of the deficiency which it seeks from JFIC and Investors in its Second Claim for Relief, and to provide an appropriate limitation on any recovery obtained from the guarantors in its Third Claim for Relief.  As such, the First Claim for Relief is completely derivative of the Second and Third Claims for Relief.

With regard to the Second Claim for Relief, the parties' agreement that the trust documents were governed by the STFA , effectively bars any deficiency judgment.  S*ee Exhibit A (Dkt. No. 1)* at p. 18.  The Bank is therefore barred by the STFA from recouping the balance of the principal and any other costs from the principal debtors, JFIC and Investors.  *See First State Bank of Forsyth v. Chunkapura*, 734 P.2d 1203 (Mont. 1987).  Therefore, the Court will dismiss the Second Claims for Relief.

**<u>Motion to Dismiss – Third Claim for Relief</u>**

The Bank's Third Claim for Relief alleges that the Guarantors "unconditionally guaranteed the full and punctual pay, performance and discharge of all [ ] obligations" under the Loan Documents. The Bank seeks a judgment against the Guarantors in the amount of this obligation to satisfy the guarantee. The Guarantors argue this claim should be dismissed because it, like the Bank's Second Claim for Relief against the principal debtors, is barred by the STFA.

The STFA protects guarantors against deficiency actions by lenders. *See* Mont. Code Ann. § 71-1-317 ("[P]roceedings may not be taken or judgment entered for any deficiency against the . . . guarantor . . . on the note, bond, or other obligation secured by the trust indenture . . . ."). The Bank, however, argues the Guarantors waived their right to an anti-deficiency defense when they signed the Commercial Guaranty agreements that provide as follows:

> Guarantor also waives any and all rights or defenses . . . arising by reason of (A) any 'one action' or 'anti-deficiency' law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement of any foreclosure action, either (1) judicially or (2) by exercise of a power of sale.

*See Exhibit C (Dkt. No. 1)* at p. 2. This provision appears to waive any defense the Guarantors may have had against a deficiency action brought by the Bank. But the Guarantors challenge that conclusion with two arguments. First, they contend the language of this waiver clause does not affect the anti-deficiency defense specifically provided by the STFA. Second, they argue that even if a court finds they waived the anti-deficiency defense, they still have no obligation to pay the Bank because they are exonerated from any obligation by Montana Code, specifically § 28-11-21.

**MEMORANDUM DECISION AND ORDER** - 7

This Court must interpret a contract as it is clearly written and may not construe a contract against the clearly expressed intentions of the parties. *Stutzman v. Safeco Inc. Co. of Am.*, 975 P.2d 32, 34 (Mont. 1997). The parties to a contract are free to craft terms to govern their individual conduct, *Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693 (Mont. 2009), and a party may waive its right to a defense in regards to a contract either explicitly or implicitly. *Northwestern Fire & Marine Ins. Co. v. Pollard*, 238 P. 594 (Mont. 1925), *Farms Elevator Co. of Reserve v. Anderson*, 552 P.2d 63 (Mont. 1976).

The Court turns first to the Defendants' argument that the language of the waiver clause in the Commercial Guarantee Agreements does not affect the defense against deficiency judgments provided specifically by the STFA. Defendants contend Montana law provides three distinct methods of foreclosure and sale of real property: (1) judicial foreclosure; (2) foreclosure by power of sale granted in a mortgage; and (3) foreclosure by advertisement and sale pursuant to the STFA. The Defendants argue the language of the contract clause only waived an anti-deficiency defense following the first two methods—foreclosure completed "either judicially or by exercise of a power of sale"—but not following the third method – a foreclosure by advertisement and sale pursuant to the STFA.

The Defendants' argument hinges on the recognition of three distinct types of mortgages in Montana law recognized by their specific names. The Montana statutes and case law do recognize three methods of foreclosure and sale. However, the Montana statutes do not appear to draw the distinction which the Defendants make here. Rather,

the statutes recognize judicial foreclosure, and then describe two methods of non-judicial foreclosure, both of which involve a "power of sale." One power of sale is granted to the mortgagee by the language of the mortgage, *see* Mont. Code Ann. § 71-1-223, and the other is granted by the law to a trustee. *See* Mont. Code Ann. § 71-1-304(2)(STFA).

This view is supported by both the statutory language and case law. First, several sections of the STFA use the terms "power of sale" and "advertisement and sale" interchangeably. For example, § 71-1-304 uses the two terms in succeeding paragraphs and within the same paragraph:

> (2) . . . a *power of sale* is conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security.
>
> (3) A trust indenture executed in conformity with this part may be foreclosed by *advertisement and sale* in the manner provided in this part . . . . The *power of sale* may be exercised by the trustee without express provision in the trust indenture.

*Id.* (emphasis added).

Second, Montana case law implies the interchangeability of these two terms. In *First State Bank of Forsyth v. Chunkapura*, the Supreme Court of Montana used "power of sale" to describe both the power given to a mortgagee in a mortgage and the power given to a trustee in a deed of trust. *Chunkapura,* 734 P.2d at 1205. The *Chunkapura* court first states: "A mortgage instrument could and still may contain a *power of sale* provision to which the mortgagee could resort for foreclosure without judicial proceedings." *Id.* (emphasis added). Three paragraphs later, when explaining the Small Tract Financing Act, the court states: "A *power of sale* is by the law granted to the trustee to be exercised after a breach of the obligation for which the trust transfer is security. The

trust indenture is considered to be a mortgage on real property . . . and provisions are made in the law for the method whereby a trustee may foreclose a trust indenture by *advertisement and sale*." *Id.*

Given the language used by the Montana courts and legislature, the Court concludes that the STFA grants a "power of sale" in a trustee. It necessarily follows that Jensen and Morgan waived this defense to the Bank's claim against them as guarantors.

However, no Montana court has yet directly confronted this issue. Resolution of this issue will not only determine who prevails between the Bank and the Guarantors but will also have a profound impact on lenders and borrowers in Montana. The plaintiff Bank is a Montana corporation, the defendants are not residents of Idaho, and there are no Idaho interests implicated in this action. Given this, and the unsettled nature of the Montana law, the Court finds it prudent to let a Montana court decide this issue, as the Court will discuss in more detail below.

The Guarantors next argue that § 28-11-211 of the Montana Code exonerates them of any obligation to pay the Bank. That statute states,

> [a] guarantor is exonerated, except so far as the guarantor may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect or the remedies or rights of the creditor against the principal in respect to the original obligation are in any way impaired or suspended.

This statute, Jensen and Morgan argue, exonerates them from any obligation because the Bank's election to foreclose and sell the property at issue was an affirmative act that extinguished the Bank's remedies against JFIC and Investors, the principal debtors. However, § 28-11-211 must be read in conjunction with § 28-11-214 which provides

that, "[a] guarantor is not exonerated by the discharge of the guarantor's principal by operation of law without the intervention or omission of the creditor."

The Montana courts have not yet considered how § 28-11-214 should be applied in this context. However, the California courts, applying an almost identical statute, *see* Cal. Civ. Code § 2825(2013) ("A surety is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor."), have considered how the statute might apply in situation such as this. In *Gottschalk v. Draper*, 100 Cal. Rptr. 434 (Cal.Ct.App. 1972), the California court upheld the liability of guarantors after the principle debtor had been discharged from the suit under an anti-deficiency law. The court reached this conclusion based on two considerations. First, the court concluded the guarantor was not exonerated because the guarantor could still be indemnified by the principal debtor. Second, the court found that when the principal debtor was discharged from the case by an anti-deficiency statute, the discharge was completed by operation of law, and that § 2825 therefore prevented the exoneration of the guarantor. *Id.*

If the California interpretation is applied to the Montana statute, the Guarantors in the present case would not be exonerated for the same two reasons. First, the Guarantors may still be indemnified by JFIC and Investors. *See* Mont. Code Ann. § 28-11-417("If a surety satisfies the principal obligation or any part of the principal obligation, whether with or without legal proceedings, the principal is bound to reimburse what the surety has disbursed, including necessary costs and expenses . . . ."). Second, Montana law states that a guarantor is not exonerated if the principal debtor is discharged by operation of

law, and the obligation of JFIC and Investors was discharged by operation of law, i.e., the SFTA. *See* Mont. Code Ann. § 28-11-214.

However, the Court is once again, for the reasons described above, reluctant to decide an unsettled area of Montana law that would have a substantial impact not only on this case, but potentially on financial practices in Montana. Accordingly, the Court will deny the motion to dismiss the Third Claim for Relief at this time and transfer the claim to Montana, as discussed further below.

**Motion to Dismiss – Fourth Claim for Relief**

The Banks Fourth Claim for Relief alleges all four defendants were unjustly enriched when they accepted and utilized the loan funds without repaying the Bank. Unjust enrichment is an action created by the law to prevent a party from unfairly profiting, to the detriment of another party, when no contractual agreement exists between the two parties. *Estate of Pruyn v. Axem Propane, Inc.*, 223 P.3d 845, 857 (Mont. 2009). Because an unjust enrichment claim is founded on the absence of an express contract, a court must dismiss an unjust enrichment claim when there is a contract between the two parties. *Total Indus. Plant Services, Inc. v. Turner Industries Group, LLC*, 294 P.3d 363, 368-89 (Mont. 2013) (dismissing an unjust enrichment claim when the dispute arose from work completed by plaintiff pursuant to an express contract). Since the Bank has express contracts with each one of the defendants in this case, the Court must dismiss the Fourth Claim for Relief.

**Motion to Dismiss -- Conclusion**

For three of the Bank's claims, the governing Montana law is clear: The Bank can seek a determination of the property's fair market value but cannot pursue the principal debtors for a deficiency judgment or for unjust enrichment. Consequently, the Court will deny the Defendants' motion to dismiss as to the First Claim for Relief and will grant it as to the Second and Fourth Claims for Relief. Montana law is far less clear, however, as to whether the Bank can pursue the Guarantors under its Third Claim for Relief. As explained above, that claim would more appropriately be decided by the Montana courts. Accordingly, the Court will deny the motion to dismiss without prejudice to the Bank's right to refile the motion in the Montana court after this case is transferred there, as discussed more fully below.

**Motion To Transfer Venue**

The Defendants ask the Court to transfer this case to the Federal District Court for the District of Montana. The Bank opposes transfer and asks that the case remain here. When considering a motion to transfer venue under § 1404(a), a court must weigh multiple factors, which could include, but are not limited to, the following:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). A court may also consider a forum

selection clause, if one is present. *See id.* This balancing test is completed on a case-by-case basis, with different weight afforded to each of the elements in accordance with the unique circumstances of each case. *Id.*

While district courts are given broad discretion in deciding whether a transfer is appropriate, the moving party bears the burden of showing why a transfer is merited. *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). The Court will examine each of the *Jones* factors.

**Where agreements were negotiated and executed**

The present record does not reveal where the Note, Deed of Trust, and Commercial Guaranty were negotiated. The Deed of Trust does indicate it was signed by JFIC in Washington and by Investors in Oregon. The Loan Documents also state they were accepted by the Bank in Montana. Because the documents were executed in multiple locations outside of the forum, and the location of negotiation is unknown, this factor is inconclusive and of little significance.

**Contacts - Costs - Availability of Compulsory Process - Ease of Access to Proof**

The Defendants argue that the Bank would save money trying this case in Montana, but the Bank's decision to file the case in Idaho shows the insignificance of those savings to the Bank. The Defendants have not pointed to any significant costs savings – or access to proof – that they would enjoy in Montana as opposed to Idaho. The property is in Idaho, but it has been sold and neither party has identified any potential non-party witnesses that might need to be compelled to testify. On the whole,

these factors are inconclusive, and because neither party has asserted concerns over unreasonable travel costs or the inability to attain crucial witnesses or evidence.

**Familiarity with Governing Law**

As a general rule, if questions of substantive state law are raised in a particular action, it is advantageous to have those issues decided in a federal court sitting in the state whose substantive law governs. *Van Dusen v. Barrack*, 376 U.S. 612 (1964). More weight is given to this factor (making transfer more likely) when the state law to be applied is not the law of the forum and is unsettled. *See Anderson v. Thompson*, 634 F.Supp. 1201, 1205 (D.Mont. 1986).

As discussed above, Montana law governing the deficiency claim against the Guarantors is unsettled. These issues are critical not only to the resolution of the claim against the Guarantors but also to Montana borrowers and lenders. Thus, this factor weighs heavily in favor of transfer.

**Choice of venue clause**

A court may also consider a choice of venue clause in analyzing a motion to transfer venue. The Loan Documents each provide: "If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Gallatin County, State of Montana." Defendants contend this "choice of venue" clause conclusively establishes that the case must be heard in the courts of Gallatin County. But the phrase "upon Lender's request" establishes that the clause is meant to be enforced only at the Bank's request. Because the Bank is not requesting transfer, and in fact

opposes it, this clause is not invoked and bears no weight in the transfer of venue analysis.

**Plaintiff's choice of forum**

Generally, the plaintiff's choice of forum is accorded significant deference. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). However, "[w]here a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight." *Kaur v. U.S. Airways, Inc.,* 2013 WL 1891391 (N.D. Cal. May 6, 2013) (quoting *Vu v. Ortho–McNeil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D.Cal.2009). Here, the Bank is not a resident of Idaho, none of the defendants are resident here, and the Idaho property subject to the loan has been sold. Thus, the Bank's choice of this forum is entitled to little weight.

**Analysis of Venue Factors**

In summary, the *Jones* factors are largely inconclusive, with only two factors playing a role in the analysis. The first, the Bank's choice of this forum, weighs in favor of maintaining the case here, but is weakened by the Bank's lack of a presence here. In comparison, the second factor – the unresolved nature of the governing Montana law – weighs heavily in favor of a transfer. As discussed above, key provisions of Montana law have not been definitively interpreted by the Montana courts. Given that the Bank drafted the loan documents with a heavy emphasis on applying Montana law, it cannot come as a surprise that Montana courts would be called upon to resolve uncertainties in that governing law. Moreover, Idaho has no interest in maintaining the case here, as the

defendants are not residents, the underlying Idaho property has been sold, and there is no Idaho law to apply. Accordingly, the Court will grant the motion to transfer.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to transfer venue or, in the alternative to dismiss (docket no. 15) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that the Plaintiff's Second and Fourth Claims for Relief are dismissed. It is further granted to the extent that the motion seeks to transfer the remaining claims to the United States District Court for the District of Montana. It is denied in all other respects.

IT IS FURTHER ORDERED, that the Clerk of the Court take all steps necessary to transfer this case to the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1404(a).

DATED: August 7, 2013

B. Lynn Winmill
Chief Judge
United States District Court